IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WAYNE MITCHELL, JR., #273-602,  *

    Plaintiff,  *

v.  *  Civil Action No. GLR-19-970

FRANK BISHOP, Warden,  *
JEFF NINES, Asst. Warden,
WILLIAM BOHRER, Chief of Security,  *

    Defendants.  *
        ***

## **MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendants Warden Frank Bishop, Jr., Assistant Warden Jeff Nines, and Chief of Security William Bohrer's Motion to Dismiss Plaintiff's Complaint or, in the Alternative, for Summary Judgment (ECF No. 15).[1] The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons outlined below, the Court will grant the Motion.

### **I.  BACKGROUND**

Plaintiff Wayne Mitchell, Jr. is a Maryland Division of Correction ("DOC") prisoner incarcerated at North Branch Correctional Institution ("NBCI") in Cumberland, Maryland. According to Mitchell, Defendants Warden Frank Bishop, Assistant Warden Jeff Nines, and Chief of Security William Bohrer have "unlawfully" approved his

---

[1] Citations refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

continued placement on administrative segregation "within an institution that has been deemed unsafe" due to his past testimony in a criminal proceeding against several correctional officers. (Compl. at 2–3, ECF No. 1). Specifically, Mitchell contends the facility is unsafe "due to retaliation and threats" by correctional officers for his "cooperation with testifying for the Attorney General's office." (Id. at 3).

On March 29, 2019, Mitchell filed a Complaint against Defendants Warden Frank Bishop, Assistant Warden Jeff Nines, and Chief of Security William Bohrer pursuant to 42 U.S.C. § 1983. (ECF No. 1). Mitchell seeks monetary damages and injunctive relief mandating his transfer from NBCI. (Id. at 4).

On August 19, 2019, Defendants filed a Motion to Dismiss Plaintiff's Complaint or, in the Alternative, for Summary Judgment. (ECF No. 15). Mitchell filed an Opposition on August 27, 2019. (ECF No. 19). To date, the Court has no record that Defendants filed a Reply.

## II. DISCUSSION

### A. Standard of Review

Defendants contend that Mitchell has not exhausted administrative remedies prior to filing suit.[2] "Motions to dismiss for failure to exhaust administrative remedies are

---

[2] Defendants also argue that Mitchell's placement on administrative segregation does not necessarily implicate the Eighth Amendment to the United States Constitution; Mitchell's claim of First Amendment retaliation is factually unsupported; and Defendants are not implicated in Mitchell's allegations, but are named solely because of their supervisory role in NBCI administration. Because the Court will dismiss Mitchell's Complaint for failure to exhaust administrative remedies, the Court need not consider the balance of Defendants' arguments.

2

governed by Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction." Khoury v. Meserve, 268 F.Supp.2d 600, 606 (D.Md. 2003). Accordingly, Defendants' motion will be treated as a motion to dismiss for lack of subject matter jurisdiction for the purpose of this argument. See Fed.R.Civ.P. 12(b)(1).

A defendant challenging a complaint under Rule 12(b)(1) may advance a "facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting 'that the jurisdictional allegations of the complaint [are] not true.'" Hasley v. Ward Mfg., LLC, No. RDB-13-1607, 2014 WL 3368050, at *1 (D.Md. July 8, 2014) (alteration in original) (quoting Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009)).

When a defendant raises a facial challenge, the Court affords the plaintiff "the same procedural protection as he would receive under a Rule 12(b)(6) consideration." Kerns, 585 F.3d at 192 (quoting Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)). As such, the Court takes the facts alleged in the complaint as true and denies the motion if the complaint alleges sufficient facts to invoke subject matter jurisdiction.

With a factual challenge, the plaintiff bears the burden of proving the facts supporting subject matter jurisdiction by a preponderance of the evidence. U.S. ex rel. Vuyyuru v. Jadhav, 555 F.3d 337, 347 (4th Cir. 2009). In determining whether the plaintiff has met this burden, the Court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991) (citing Adams, 697 F.2d at 1219).

3

Nevertheless, the Court applies "the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." Id. (citing Trentacosta v. Frontier Pac. Aircraft Indus., Inc., 813 F.2d 1553, 1559 (9th Cir. 1987)). The movant "should prevail only if the material jurisdictional facts are not in dispute and the [movant] is entitled to prevail as a matter of law." Id. (citing Trentacosta, 813 F.2d at 1558). Unlike under the summary judgment standard, however, the Court is permitted to decide disputed issues of fact, Kerns, 585 F.3d at 192, and weigh the evidence, Adams, 697 F.2d at 1219.

**B.** **Analysis**

The Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, requires prisoners to exhaust administrative remedies prior to bringing suit. See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). Exhaustion is mandatory, and the Court ordinarily may not excuse a failure to exhaust. Ross v. Blake, 136 S.Ct. 1850, 1856 (2016) (explaining "[t]he mandatory 'shall'... normally creates an obligation impervious to judicial discretion") (quoting Miller v. French, 530 U.S. 327, 337 (2000)).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. See Moore v. Bennette, 517 F.3d 717, 729 (4th Cir. 2008). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." Woodford v. Ngo, 548 U.S. 81, 88,

93 (2006). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out' and 'doing so properly (so that the agency addresses the issues on the merits).'" Id. at 93 (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)).

An administrative remedy is available if it is "'capable of use' to obtain 'some relief for the action complained of.'" Ross, 136 S. Ct. at 1859 (quoting Booth, 532 U.S. at 738). However, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). As such, the Court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." Aquilar-Avellaveda v. Terrell, 478 F.3d 1223, 1225 (10th Cir. 2007); see Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006).

The Supreme Court has identified three circumstances in which an administrative remedy is deemed "unavailable" and the exhaustion requirement "does not come into play." Ross, 136 S. Ct. at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. at 1859. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." Id. The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

5

A prisoner confined in a Maryland prison may file a grievance—i.e., a complaint arising from the circumstances of the prisoner's custody or confinement—with the Inmate Grievance Office ("IGO") against any Division of Correction ("DOC") official or employee. Md. Code Ann., Corr. Servs. ("C.S.") §§ 10-206(a)–(b); Md. Code Regs. ("COMAR") 12.07.01.01B(8). Before doing so, however, an inmate "must exhaust" the Administrative Remedy Procedure ("ARP") process for his prison. See C.S. § 10-206(b); see also COMAR 12.07.01.02.D; OPS.185.0002.02.6.

The ARP process consists of multiple steps. A prisoner must file an ARP with his facility's managing official within thirty days of the date on which the incident occurred, or within thirty days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR 12.02.28.02(D)(1), 12.02.28.09(B). If the managing official denies the ARP, the prisoner has thirty days to file an appeal to the Commissioner of Corrections. COMAR 12.02.28.14(B)(5). If the Commissioner of Correction denies the appeal, the prisoner has thirty days to file a grievance with the Inmate Grievance Office ("IGO"). C.S. § 10-206(a); COMAR 12.02.28.18, 12.07.01.05(B).[3]

---

[3] When filing with the IGO, the prisoner is required to include copies of the following: the initial request for administrative remedy, the warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Corrections, and a copy of the Commissioner's response. COMAR 12.07.01.04(B)(9)(a).

If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing." C.S. § 10-207(b)(1); see also COMAR 12.07.01.06(B). An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. C.S. § 10-207(b)(2)(ii). Ordinarily, a failure to appeal the Commissioner's response to any claim constitutes a failure to properly exhaust administrative remedies.

On February 20, 2018, Mitchell filed an ARP asserting that the decision to keep him on administrative segregation "due to an open court case" was "clear and blatant discrimination against [him], as well as cruel and unusual punishment" because "several co-defendants on the same open case . . . are all in general population within [NBCI] and other facilities." (Defs.' Mot. Dismiss Pl.'s Compl. Alt. Summ. J. ["Defs.' Mot."] Ex. 1 ["NBCI Records"] at 36–37, ECF No. 15-2). This ARP was dismissed for procedural reasons on February 26, 2018, explaining that "[i]nmates may not [seek relief] through the Administrative Remedy Procedure regarding Case Management recommendations and decisions." (Id. at 36). The comment dismissing Mitchell's ARP noted the decision was "[f]inal per OPS 185.0002.05.F.1." (Id.).

OPS.185.0002.05F(1) provides that case management decisions are to be filed directly to the IGO. However, Mitchell admits he took no further action on his ARP, either through an appeal to the Commissioner of Corrections or by filing his grievance directly with the IGO. (See Pl.'s Opp'n at 5–6, ECF No. 19-1). Additionally, Mitchell has not alleged any facts showing that administrative remedies were otherwise "unavailable" to him. See Ross, 136 S. Ct. at 1859. Because Mitchell failed to exhaust his administrative remedies before filing suit, his claim must be dismissed.

## III. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's Complaint or, in the Alternative, for Summary Judgment (ECF No. 15) will be GRANTED. A separate Order follows.

Entered this 18th day of March, 2020.

_____/s/_____
George L. Russell, III
United States District Judge